## CONTRACTS, PERSONAL AND INDEFINITE.

[Probate Court of Hamilton County.]

IN THE MATTER OF THE ESTATE OF JACOB R. STEWART, DECEASED.

Decided, January, 1904.

*Administrator—May Terminate Contract Made by Decedent—Though not Personal in Its Nature—But where Uncertain or Indefinite as to Time of Performance.*

1. A contract of purchase and sale is not personal to the vendor, and does not become voidable at his death, where there are no obligations imposed which can not be equally well performed by the administrator.
2. But where such a contract is uncertain and indefinite as to the time of its performance, depending on the continued success of a business and other circumstances which make it impossible to say that it will ever be completed, the administrator may avoid it upon the giving of proper notice.

NIPPERT, J.

This matter comes before this court on the application of John W. Herron, administrator, for instructions in regard to 360 shares of stock in The Bradford Machine Tool Company; the said administrator alleges that he is ignorant, whether or not the said shares of stock are truly assets of the estate of the said Jacob R. Stewart, and further, that he is ignorant whether the same should be distributed to the distributees of the estate of said Jacob R. Stewart or held by him as administrator, to answer the alleged obligations of the following contract, entered into by said Stewart in his lifetime:

"J. R. Stewart agrees to sell 360 shares of the capital stock of The Bradford Mill Company to W. T. S. Johnson, George F. Stewart and Lewis N. Gatch, and said W. S. Johnson, George F. Stewart and Lewis N. Gatch agree to buy the same in equal proportions on the following terms and conditions, viz.:

"1. The purchase of said stock shall be at its par value of $100 per share.

"2. Said stock shall remain in the name of said J. R. Stewart until it is fully paid for as herein provided. During the time

it stands in his name he shall retain full power to vote the same, provided, however, that if said purchasers unite in requesting that it be voted in any particular way, it shall be voted in accordance with their unanimous request, and provided also that, in case of his ceasing to take an active part in the business, said stock thereafter, until it is delivered to said purchasers, shall be voted in accordance with the requests of any two of them.

"3. All dividends declared on said stock shall be paid to J. R. Stewart until it is paid for in full. Enough of said dividends shall be retained by him to make four per cent. on the balance of said purchase price unpaid at the time said dividends are respectively declared, and the balance thereof applied by him on said purchase price; and as soon as said stock is fully paid for, either through dividends or otherwise, it shall be delivered to said purchaser. In case the dividends declared any year shall be less than four per cent., no interest shall run on said purchase price in excess of the dividend declared, and if none be declared, there shall be no interest.

"4. Should said purchasers desire to make payments on said purchase price, in addition to the dividends from time to time declared on said stock, they shall have the option of doing so.

"5. Said W. T. S. Johnson and George F. Stewart severally agree to remain in the employ of said The Bradford Mill Company until each has paid his respective share of said purchase price, and in case either one of them withdraws from the employment before that time, excepting in the case of his death, he shall be entitled in severalty to so much of his portion of said stock as has been theretofore paid for, and to a sixty day option on the balance of said portion at par, with six months time in which to pay for it; and this contract shall be terminated as to him but it shall continue pro rata as to the other parties. In case either of said purchasers shall die during the continuance of this contract, the remaining two shall acquire his interest in said contract, and in the stock covered by it, by paying to his estate an amount equivalent to that theretofore credited on his portion of said purchase price, and this contract shall continue on that basis. If they decline to do this, said J. R. Stewart shall pay that amount to said estate in cash. In either event this contract as to said decedent shall be terminated, but it shall continue pro rata as to the other parties.

"6. The provisions of this contract as to dividends shall not apply to any dividend that may be declared at the close of the current fiscal year of said company; but said dividend shall be car-

ried to the account of said J. R. Stewart, and no part thereof applied to the payment of said purchase price.

"Executed in quadruplicate this 23d day of September, 1899.

"(Signed)   J. R. STEWART,

"W. T. S. JOHNSON,

"GEORGE F. STEWART,

"LEWIS N. GATCH."

The original of the above contract bears the following endorsement:

"It is hereby agreed by the parties hereto that this contract in all its terms and conditions shall apply to 360 shares of stock of The Bradford Machine Tool Company, instead and in lieu of the said 360 shares of stock of The Bradford Mill Company, and that on this agreement said J. R. Stewart may surrender for cancellation said stock of The Bradford Mill Company upon the issuance to him of the same amount of stock of The Bradford Machine Tool Company, which he agrees to hold subject to the terms of this contract and to the rights of the parties thereto in place of said surrendered stock. This agreement is made in order that the plan may be consummated for winding up the affairs of The Bradford Mill Company by the surrender of its stock by its stockholders and the transfer of its assets to The Bradford Machine Tool Company, upon the issuance to said stockholders respectively of amounts of stock of The Bradford Machine Tool Company equal to those of The Bradford Mill Company surrendered by them.

"CINCINNATI, OHIO, February 10th, 1900.

"(Signed)   J. R. STEWART,

"W. T. S. JOHNSON,

"LEWIS N. GATCH."

On March 3d, 1902, this court made a certain entry in this estate of J. R. Stewart, consenting to the action of said Lewis N. Gatch whereby he transferred and assigned all his interest in the said 360 shares of stock and in said contract set forth above to the said George F. Stewart and W. T. S. Johnson, so that the said Gatch has now no longer any interest in the aforesaid contract.

The said administrator further alleges that Carrie E. Stewart, Gertrude Stewart Titus and Mary L. Hazelton have demanded that he disregard said contract and that he distribute the said

360 shares of the stock of The Bradford Machine Tool Company to them, as the distributees of said estate, either by selling same or by making a distribution of the same in kind, for the reason that the contract herein set forth is wholly null and void as against the estate of the said Jacob R. Stewart for the following reasons:

1.   That the same wholly lacks a valid and sufficient consideration to sustain the same as a legal contract.

2.   That the same is and was personal to the said Jacob R. Stewart, and is wholly incapable of performance by his administrator.

3.   That it is uncertain and illusory in its nature and future effect, so that the administrator can not determine what his obligations may be under the same, or how long the estate of said Jacob R. Stewart may be delayed of settlement by reason thereof.

Upon the filing of said application process was issued by this court ordering the said W. T. S. Johnson, George F. Stewart, Carrie E. Stewart, Gertrude Stewart Titus, Mary L. Hazelton and The Bradford Machine Tool Company requiring said parties to answer to the petition of said administrator and to set forth each and every one of them, what claims they have, if any, upon the aforesaid shares of stock, whereupon the widow and daughters of said J. R. Stewart, deceased, did thereupon appear in court and asked that the said contract be set aside and held for naught for the reasons mentioned in the application to the administrator, as above set forth.

On the other hand it is maintained by George F. Stewart and W. T. S. Johnson, the vendees of said stock, that the said contract is a good and sufficient one, that the same is not lacking in any particular, as regards a valid and sufficient consideration; they further hold that the same is not personal to said Jacob R. Stewart, but may and must be performed by his administrator.

Furthermore they maintain that the contract is neither uncertain nor illusory. Referring to the contention that the alleged agreement is without mutuality or consideration of any kind, it may be stated that a consideration is an absolute necessity to the validity of the contract. Equally true is it, that the adequacy of the consideration will not be inquired into by the court

unless it is so trifling as to shock the conscience of the court. In the proper construction of the contract this court is in full accord with the doctrine in *Heryford* v. *Davis,* 102 U. S., page 243, which lays down the following rule:

"What then is the true construction of the contract? The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provision it contains, disconnected from all others, but in the ruling intention of the parties gathered from all the language they have used. It is the legal effect of the whole which is to be sought for."

Viewing the contract at issue under the above directions, can it be said that the same is totally lacking in the element of mutuality? The first paragraph thereof states that J. R. Stewart agrees to sell the said 360 shares to Johnson and his associates, and said Johnson and his associates agree to buy same in equal proportions on certain terms and conditions, and the price thereof is definitely settled, namely $36,000. It is further provided therein that the said stock shall remain in Stewart's name until it is fully paid for as provided in said contract, with other provisions as to the power of voting same. The remaining paragraphs show the real consideration of the contract, namely: That the said W. T. S. Johnson and George F. Stewart were to remain in the employ of the said Bradford Mill Company until each has paid his respective share of the purchase, either through the dividends declared on the stock or by virtue of the payments they might make on said purchase price in addition to said dividends; in other words the said contract imposes upon said parties an alternative obligation; they were either to remain in the employ of said company and work for its interests until the dividends had paid for their shares of stock or until they paid for same in cash. It is urged however that by virtue of item 5 in said contract, they are permitted to leave the employ of the company at any time, without any loss to themselves, and that accordingly the consideration of remaining with the company falls to the ground. A closer inspection of said paragraph will show that, in case of withdrawal from the employ-

ment before each has paid his respective share of said purchase price, the one so withdrawing shall only be entitled in severalty to so much of his portion of said stock as has been paid therefore, and to an option on the balance of said portion at par; in other words, as long as either of these parties shall remain in the employ of said concern he shall reap benefits in addition to his salary by the dividends earned on his portion of the stock, and that when this employment ceases he shall no longer reap these benefits. As long as he remains in the employ of thi. company, so long shall he receive benefits by virtue of the dividends declared, and the moment he leaves the employ then those benefits cease.

Regarding the claim that the said contract is and was personal to the said Jacob R. Stewart, the court is of the opinion that the agreement was not personal to him but may be performed by his administrator.    There is no doubt that there are contracts of a personal nature, depending upon the personal skill of the obligee, such for example as the obligation of an author to write a book for publication, or of a workman to instruct an apprentice; these contracts, although binding upon the deceased during his lifetime, are not binding upon his legal representatives, so if the contract of the deceased be personal and the performance of the deceased himself be the essence thereof, his executor will not be liable except only so far as the contract was broken during his lifetime (*Dickenson* v. *Callahan,* 19 Pa. St., 227; *Blakely* v. *Sousa,* 197 Pa. St., 305).    Accordingly had either Johnson or Stewart, vendees, died, it is certain that this contract would have terminated and could not have been enforced as against the legal representatives of either one of the vendees, for the reason that their personal services could not be performed by any one else. The duties of the vendor, Stewart, under said contract, however, are such that they could be equally performed by his administrator, for the reason that no personal element attaches to said services.

The contract, in the opinion of the court, is only defective by reason of the fact that it is uncertain and indefinite as to the time of the performance.    The payments for this stock must arise from one of two sources, either from the dividends declared thereon in excess of four per cent. or from the privileges which

the vendees have of making payments, as set forth in paragraph
four of the aforenamed contract. Whether any dividends would
be declared at all on this stock or how long their payments
would continue was, as far as shown by the agreement, purely
speculative; if the company is successful in the future it is
possible that the dividends would in time pay for the stock as
intended by the agreement; if, on the contrary, the company is
unsuccessful, there is no telling when, if ever, the said agreement
would be carried out; in fact it may be said that it is possible
that the said agreement would never be completed; it would
depend entirely on the contingencies of the business of the cor-
poration. An agreement of this kind by virtue of its uncertain
and indefinite character as to time is voidable at the option of
either party to the agreement and can be determined by either
by giving reasonable notice to the other party of his intention
to do so. Now the contract under discussion provides that
either W. T. S. Johnson or George F. Stewart are permitted to
withdraw from this agreement at any time, and it further pro-
vided that, in the event of such withdrawal, either party should
be entitled in severalty to so much of his portion of said stock
as has been heretofore paid for; in addition he is to have a sixty
day option on the balance of said portion at par, with six months
time in which to pay for it; now as the vendees of this contract
have such a right to terminate same at any time, it appears to
the court that it would be just and equitable to allow the vendor,
or his representatives, to have the same right. Accordingly the
administrator in this case is instructed that he has the right to
terminate this contract by giving notice of his intention to do
so to the parties in interest; that said administrator should ascer-
tain the amounts paid on this stock by said vendees, either in
dividends or otherwise, as provided for in said contract, and notify
said vendees that they are entitled in severalty to so much of
their portion of said stock as has been paid for heretofore, and
that said vendees are entitled to a sixty days option on the bal-
ance of said portion at par, and to notify said vendees that they
have six months time in which to pay for same. Should said
vendees or either of them fail to take advantage of the sixty

days option, as mentioned above, then said administrator shall assign, transfer and convey in severalty to said vendees such a portion of said stock as has been theretofore paid for by them either through dividends or otherwise; the balance of said stock to be distributed by said administrator according to the laws of descent and distribution.

*Wm. C. Herron,* for the administrator.

*Robert Ramsey,* contra.